welcome you got what 20 plus students 24 all bright-eyed attentive they get any extra credit for coming that's reversible error all right well welcome I hope you guys enjoy it we've got two cases on today's oral argument docket the first 22-5 1046 US v Owens mr. Neal podium is yours may it please the court in 2020 and 2021 this court addressed multiple actual methamphetamine cases coming out of the Midland Division of the Western District of Texas Rios Balthazar led those cases in Rios Balthazar the methamphetamine seized was not tested for its purity so also the defendant did not admit that his methamphetamine had a certain level of purity this case is nearly identical to Rios Balthazar Owens was detained by law enforcement and from him was seized 10 ounces of methamphetamine the purity of that methamphetamine was never tested or determined Owens similarly made no statements about the purity of that methamphetamine Owens was also held responsible for five pounds of methamphetamine that were attributed to him based on the statement of his co-conspirator that he had participated in the importation of that methamphetamine but that methamphetamine was never seized and therefore its purity also was never determined nonetheless Owens's precedence report held him responsible for 2.5 kilograms of actual methamphetamine which increased his sentence by a little less than two years ten years over what it would have otherwise been had he been sentenced based on 2.5 kilograms of a mixture containing methamphetamine after his direct appeal nonetheless his counsel did not raise the actual versus mixture of methamphetamine issue after his direct appeal Owens's challenge sought to vacate his sentence because his counsel's performance was ineffective for failing to make that objection in order to show that counsel's performance was ineffective Owens was required to show that failure to make that objection fell below an objective standard of reasonableness and he was also required to show that had the objection been made there was a reasonable probability of a different result in this case the indictment that charged Owens was specific that it was actual meth instead of a mixture and is that what he pled to yes your honor the indictment alleged actual methamphetamine more than 50 grams and that is what he pleaded to and why does that not matter in terms of whether it wasn't was actual meth or a mixture because when he pleaded to the indictment there was no explanation to him about what the fact that it is described in the indictment as actual methamphetamine meant and there was no statement in the factual basis supporting the determination that it was actual methamphetamine if the factual basis had included for example information that the methamphetamine had a purity of greater than 80 percent then that would be prejudicial to Owens's argument here but the mere fact that he pleaded guilty to actual methamphetamine is not determined which what this court ruled in Rios-Baltazar. Okay I just may be asking the same question Judge Douglas did a different way but why is there not enough uncontested evidence for the district court uncontested information for the district court to conclude that these five pounds of meth were 98% pure thus exceeding the 1.5 kilograms of actual meth that's required to support the sentence? So there was no evidence of what the five grams that Owens participated in importing what its purity was the 98% figure comes from methamphetamine that was seized as part of a completely separate conspiracy that 98 figure is testing meth that Owens was not held responsible for and that he was not linked to really in any way that's what the government relies on to say that you know that we can find this other meth and determine that it's probative of Owens's methamphetamine but the precedence report doesn't contain any evidence to link Owens methamphetamine to that other seized methamphetamine. I'll elaborate a little bit more on that in a second but returning sort of initially want to spend a second addressing whether counsel's performance was deficient the district court here did not seek to defend counsel's performance did not cite a reason why it was reasonable for counsel not to object to the actual methamphetamine determination instead the district court said counsel's assistance may have fallen below an objective standard of reasonableness the government doesn't seek to defend the assistance either the government assumes the assistance fell below an objective standard on government's brief 10 and also when Owens filed his motion to vacate the sentence for ineffective assistance of counsel the government had an opportunity to introduce additional evidence that would give this court more confidence in the outcome to show that the methamphetamine that Owens was involved with was pure for example it could have introduced it could have tested the methamphetamine that was seized from Owens it could have had evidence from a co-conspirator that the methamphetamine that Owens was held responsible for was you know about they could have came from a particular source or was manufactured in a certain way or appeared to be pure or was priced consistent with pure methamphetamine but the government didn't introduce any evidence along those lines instead the government only relied on what the the methamphetamine that you're referring to judge Willett this methamphetamine that was seized from a co-conspirator of Stowe not Owens the problem with the government's reliance on that methamphetamine is that the PSR the precedence report contained very little information about that methamphetamine or the conspiracy that it was part of and what little information it did contain tends to indicate that it wasn't probative of the on the report what we know is that after Owens was arrested his co-conspirator Stowe continued in the methamphetamine business and formed a different conspiracy with at least one other person that one other person was arrested 23 days after Owens arrest and methamphetamine was seized from that arrest that's what the government relies on for the 98% figure it's not it's I'm gonna get to that argument in a second so the PSR contains information that number one Stowe not your client Stowe has a Mexican contact in Tijuana number two that Stowe obtained this 98% pure methamphetamine on November 28th from Tijuana number three that Stowe and Owens obtained the five pounds of methamphetamine from Tijuana your client never presented any rebuttal evidence that that information was materially untrue am I right so far I have a little qualm with contact versus multiple contacts in Mexico but otherwise yes I there's no rebuttal evidence that the information was materially untrue right so in your view why wouldn't why couldn't the district court rely on this information to infer that Owens five pounds of meth was from the same Tijuana contact and thus 98% pure so for a couple of reasons first the statements that Stowe gives about the second batch of methamphetamine that he acquires from Tijuana the report says Stowe revealed he utilized an individual not Owens's individual to find him methamphetamine so the statement that Stowe is giving at least seems to say that this second trip or this second batch of methamphetamine came from a entirely different source but also the whole paragraph it's paragraph 7 of the report record 242 see you know discusses him Stowe gathering methamphetamine from different sources and having a contact who helps him source that methamphetamine from different people so the idea that we can say the government wants to say that it came from the same source it's not indication there's not an indication that Owens's second batch of methamphetamine came from a single source there's not an indication that that was the same source as the methamphetamine that Owens was held responsible for in a prior trip is that same PSR information that I just went over is that same PSR information plus information that Stowe and Owens were co-conspirators is that sufficient for a district court to find that Owens that that 10.6 ounces of meth was also 98% pure no your honor and the reason is because they're from they're from completely separate conspiracies and it's important to look at the cases that have kind of dealt with this issue about seeing whether outside of the conspiracy methamphetamine is probative of inside of the methamphetamine that a defendant is actually held responsible for so in this court's decision in Davalos-Cobion the court there was not it was the methamphetamine was seized from a conspirator not a co-conspirator of a co-conspirator but a conspirator so there's only in Davalos-Cobion there's only one level of removal there this court found error when the district court relied on methamphetamine seized from a conspirator to conclude what the maturity of the methamphetamine that the defendant in that case had supplied to his conspirator but the even more appropriate case is the Seventh Circuit's decision in Carnell in Carnell before you go to that case let me the one you just mentioned Davalos-Cobion that's my understanding so there we said the PSR did not contain sufficient evidence of reliability yes sir that tied the from a co-conspirator to the defendant yes because the co-conspirator there were other suppliers and the purities of past samples might have varied here unlike in that case there's evidence of a common supplier and there's no evidence of unreliable or inconsistent metrics in determining purity and I so I disagree with the court's characterization of this case being from one supplier it's the reading of the my reading of the PSR is that there were multiple sources in Mexico and that Stowe is admitted is saying that he's using a different source of supply for this second conspiracy than Owens than Owens is if it were the same source that would be probative evidence it would there would still be the additional problem of showing that that that source provides consistent levels of methamphetamine and so I think the court's question goes to whether there's a certainty that Owens would have been would have prevailed rather than a reasonable probability of him prevailing but the other issue your honor is you know we're looking at one paragraph of the PSR and we're trying to answer a question that the writer of the PSR was not trying to answer right we're trying to answer whether this other methamphetamine was probative from a different conspiracy was probative of the methamphetamine that Owens possessed or was responsible for and the reason why the PSR is silent on this issue is because Owens's counsel did not raise the issue and so it seems like you know what the government's argument is asking us to do is to sort of take this very textualist reading of a document that's not designed or written to answer the question we're trying to answer so it would have been the recommended sentence would have been 210 to 262 months your honor I think an evidentiary hearing would have helped here especially because there is questions there are questions in the record about the 98% figure the record actually conflicts on this the evidence that the government submitted in response to the motion is a report that shows that 205 grams were tested where and 201 of those grams were met were pure methamphetamine the factual basis right at the time of the plea by the from the unknown co-conspirator and the PSR says that those that the test resulted in 201.3 grams so there's a there's a 98 percent figure but there's also a 78 percent figure are says twice that still has a contact singular or an individual singular who sources his his meth why doesn't that provide some we're talking about one source and not two so the the sentence your honor is referring to is Stowe reported he has a Mexican contact and a conspirator met the contacts in Tijuana during the trip their trip so we have one sentence and two characterizations of how many people he's dealing with and that's why I think it's a mistake to rely conclusively on a report that's not designed to answer the question that we're dealing with it gets into a certainty of success as opposed to a reasonable probability all right mr. O'Neill we'll see you back on rebuttal thank you all right we'll now hear from the United States may it please the court Elizabeth Berenger for the United States I just want to jump right into the defendants claim that the PSR didn't support the purity finding and first I want to just talk about the burden in these proceedings this is unlike the cases mentioned by the defendant Rios Baltazar and Davalos Coppian because this is a 2255 proceeding the burden is flipped it's not the government's burden to prove the purity at this point it's the defendants burden to prove that any ineffective assistance of counsel was prejudicial so the notion of us coming up with evidence to prove purity at this point that would be upending the burden and there is evidence in the record to support the defendants counsel objected the bulk of methamphetamine as we talked about in this case is from paragraph 7 it's Stowe's admission that he took these six trips to Tijuana and I just want to remind the court Tijuana is not very close to Midland so it's not Juarez he's not going to see that Acuna which would be Mexico near Midland he's going a thousand miles away to Tijuana which is south of San Diego so there's evidence in the record that he's gone on these six trips to Tijuana he has a contact there and then he's bringing him back in a very similar pattern there's evidence that Owens and Stowe were partners that they were jointly in this together there's and he said he had a contact there and then one of the six trips of these six trips that we're talking about he went with Owens where they bring back the five pounds of methamphetamine that we're talking about today and I don't read the PSR the same way that the defendant did when I read that he says he utilizes another individual not Owens to find him methamphetamine and that sort of suggests that Stowe has one line of distribution and Owen may have another but they're still partners in this distribution scheme so I feel like the fact that Owens may have other people bringing him methamphetamine isn't inconsistent with these six trips taken by Stowe and the fact that Owens it's a foreseeable outcome that that methamphetamine would keep coming what do you make of the difference between a reference to a contact single as opposed to contacts plural yeah I can't explain that I don't understand why it says contact and contacts but I don't know that that's important I don't know that so what we have here is we have you know of these six trips we have Owens involved in one of those trips and we have a very similar trip in described in paragraph five and that's really the only testing we have is this very similar trip where the co-conspirator who stopped says he goes with to Tijuana with Stowe they body carry pounds of methamphetamine back summer sees summer not and they get back and the co-conspirators given just as in as Stowe was in the trip with Owens the methamphetamine so it's a very similar setup of going to Tijuana and coming back and from that the court could plausibly conclude that these different trips that Stowe is taking would have a similar level of purity in addition to the other evidence in the record they're just so similar and it's also and you know this court has typically allowed if we're just looking at a co-conspirator statement about these six trips and we're talking about one seizure this court has allowed historical estimates based on that same evidence we have Lucio which is actually a published decision which talks about Bettencourt and both of those allow a co-conspirators statements about drug type and quantity to be partially corroborated by a seizure that's sort of similar in pattern so this isn't off the course of what the court did it's very consistent with this court's precedent of how a district court is given discretion to make reasonable estimates and extrapolations based on the evidence before it and I did want to briefly address the fact that we're talking about allegedly two different conspiracies there's one conspiracy and the indictment which you pointed out I actually agree with you judge Douglas that the fact that he admitted that he imported this methamphetamine I know that was rejected in real spotless are but that's an unpublished decision and it's not precedent that that is evidence that supports a district court finding that he admitted to a conspiracy that's distributing actual methamphetamine but we're not just and he agreed that he he conspired with Owens but he also agreed that he conspired with others and there's other fingerprints in the in the record in paragraphs three through seven of Owens working with ghost can co-conspirators calling them from his jail cell trying to urge the conspiracy to keep going he wasn't just talking to so and he wasn't just working with Stowe he was working with members of the conspiracy but when we're talking about sentencing we're not talking about different conspiracies we're talking about relevant conduct and 1b 1.3 says that a defendant is liable for all acts that are reasonably foreseeable and jointly undertaken activity from common and common schemes or plans so I think it was plausible for the court to conclude conclude in this evidence that whatever was happening was there an agreement that the quantity would not be attributed to him not even as relevant conduct no there was no agreement that he did dispute some of those facts and the factual basis of the change of plea but it was just going to be resolved he admitted to the over 50 grams of actual methamphetamine and so this is just a sentencing the defendant didn't object on the grounds that the district court didn't grant a hearing given that it was his burden in 22 well hearings are not always required that that wasn't an issue that's raised on appeal I'm happy to brief that issue but the defendant just as the government was could have attached affidavits his own affidavit he could have attached something saying I got my methamphetamine from a different place we always cut it like this he could have attached co-conspirator statements so the court would have accepted these additional documentations to the court just felt like the defendant hadn't met his burden to show that any if ineffective assistance of counsel was material but I understand the court's concern this is not the did it satisfy the hurdle did the court do its job and making a reasonable estimate I think under the case law it did it did make a reasonable estimate and particularly in light of the Strickland analysis it is true right that some indicia of reliability we've interpreted that to mean that the for sentencing purposes have to be reasonably reliable yes and there have been some guideposts and some guardrails put on there I mean I think these cases Rios Balthazar and Davalos Cobian were definitely outlier decisions where there's one has absolutely nothing in the record it seems like it's unpublished so we don't really get to flesh that out and Davalos Cobian is just really a mess of an unreliable metric but that's not what we have here we have a co-conspirator statement that's partially corroborated by a seizure that supports what the co-conspirator had said and that's Lucio that's a published decision finding that's enough that's enough to do it if we we can have these partially corroborated statements and that gives enough evidence in the record to do that you know I I don't know maybe I don't know why the court didn't grant a hearing I I'm happy again to brief that issue I know it's troubling whenever that happens and that's that's the best answer I can give so I also wanted to say that with regard to whether that conduct described in paragraph 5 can be attributed Owens of course is the PSR mentions continues to just perpetuate and move this conspiracy forward even after his arrest so it would probably be it would be reasonably foreseeable that a few weeks later his partner in crime would go down to Tijuana following the same pattern that he'd been doing before so it's all relevant conduct but even if it's not relevant conduct that seizure with Stowe is the common denominator gives us a reliable metric to give some indicia of reliability from the pre-sentence report so if there are no more further questions I would see the rest of my time to the court Miss Berger, thank you very much. Mr. O'Neill, welcome back. You've got five minutes. Thank you, Your Honor. There were no statements by a co-conspirator about the purity of the methamphetamine that Mr. Owens was involved with so this is completely distinct from Lucio and also there were no calls to anyone other than Lucio called Stowe on November 5th and November 6th the day of his arrest and the day after this separate conspiracy in which the methamphetamine is finally tested is not uncovered there's no evidence of existence prior to 23 days after Owens's arrest and so the conspiracies are entirely separate this was a two-person indictment in which Owens was indicted with Stowe for their conspiracy and Owens was only held responsible for the products of that conspiracy the government did not object or the PSR did not and the PSR did not contemplate holding Owens responsible for the methamphetamine involved it that was finally seized and analyzed so the government's argument that this was one conspiracy the government forfeited that argument they didn't argue there should be more relevant conduct attached to Mr. Owens they didn't argue that the additional methamphetamine that Stowe told them about was reasonably foreseeable to Owens at the district court they didn't appeal the district court's decision so the argument that that was the part of the same conspiracy they've given that up already on the issue of a hearing Owens did raise on page 29 of the opening brief that the district court did not conduct a hearing and that there is an evidentiary problem with the art with the with what the district court relied on because we have in a factual basis the government saying that this outside of the conspiracy methamphetamine when it was seized weighed 261.8 grams and when it was tested 201.3 grams which would yield a purity of 78% below the 80% threshold but then their report shows that the total meth weighed 205 grams and the pure and the pure meth weighed 201.3 grams so there there was a issue with the district court's determination that the methamphetamine that was outside of the conspiracy that the government relies on is 98% pure as opposed to 78% pure and the district court did not hold a hold a hearing to resolve that discrepancy. I do want to briefly talk about the Seventh Circuit's decision in Carnell because I feel like the government's argument asked this court to split with that. In Carnell there was a much greater relationship between the defendant and the person who possessed the methamphetamine that was seized and tested. They were actually riding in the same car together, they were friends, there was some indication in the record that they might have previously, you know, done a methamphetamine deals together. The Seventh Circuit... Is it correct that the purity conclusion in the November 28th report differs from the indictment in the PSR? So the November 28th report, I'm not, is that the the methamphetamine that was seized on November 28th? Doesn't that make the PSR ambiguous? Yes, Your Honor, the PSR read in light of the factual basis is quite ambiguous. It seems to indicate that the methamphetamine seized on November 28th was 78% pure, but then the DEA analysis that the government attached to its response to our motion said it was 98% pure. So it's your position that that can only be cured with an evidentiary hearing? I think that that could only be cured by an evidentiary hearing, but you only get to that question if you reject my argument that the outside of this conspiracy methamphetamine was not probative of the methamphetamine that Owens was held responsible for, which would mean you disagree with the Seventh Circuit's decision in Carnell where they dealt with two people who knew each other and were friends and were actually in the same car when the tested methamphetamine was seized. That methamphetamine was not attributed to the defendant and the Seventh Circuit said that the purity of that methamphetamine was not probative of the methamphetamine that the defendant was held responsible for. What does reasonably reliable mean? So again, when we've talked about the phrase, you know, some indicia of reliability, as I mentioned to Ms. Behringer, and we've interpreted that we recognize that facts used by the district court for sentencing purposes have to be reasonably reliable, and the prosecution, the government, sort of says, yeah, this isn't the strongest case, not the most watertight case, but it's enough. Reasonably reliable. So, Your Honor, it means that there has to be something in the PSR showing where the information comes from. So, we look at classic examples, right? You know, an officer has said in his report, or something that the PSR writer used, we say officer statements are reliable, that we say co-conspirator statements are reliable, but there has to be something there. Here, there is nothing there. There is no statement of a co-conspirator. There is no officer's analysis. There is just the conclusory statement that he had actual methamphetamine, and there's nothing underlying that. Okay. Mr. O'Neill, thank you very much. Am I correct, you were court-appointed? Yes, Your Honor. We appreciate your able advocacy. Thank you very much. The case is submitted, and we'll give them time to...